Vincent A. Lupiano, J.
The defendants Sarlie and Cats move for dismissal for insufficiency of each cause stated in the complaint. It is alleged that plaintiff Penn-Texas Corporation is the owner of all the capital stock of the plaintiff Tex-Penn Oil & Gas Corporation and that during the times in issue one Silberstein was president, board chairman, chief executive officer of Penn-Texas and as such completely. controlled and dominated the business affairs of Penn-Texas, its other officers and more than a majority of the directors. This allegation of control must be regarded as an ultimate allegation of fact. It is further alleged that the defendant Sarlie is a personal and business associate of Silberstein and that defendant Cats was and is the son-in-law of Silberstein, acted as and held himself out to be and was represented as being financial adviser to Penn-Texas. The allegations contained in paragraph 7 of the complaint relating to the existence of a conspiracy between Silberstein and Sarlie and Cats are conclusory, but this fact is not fatal if the allegation is supported by other allegations or reasonable inferences to be drawn therefrom.
In the first cause of action it is alleged that Penn-Texas engaged, through a wholly owned subsidiary, in a transaction to acquire certain oil and gas leases. As a part of the conspiracy and in the execution of this transaction, Silberstein caused Penn-Texas to issue a quantity of its common stock to a Sarlie-owned corporation at a price below its market value. Further, as part of the transaction, Silberstein caused a certain oil production payment in the face amount of $225,000 to be sold to Sarlie’s corporation for $35,000, and after Sarlie had received more than $20,000 of this oil payment, Silberstein caused Penn-Texas to repurchase the oil production payment at the sum of $175,000. It is finally alleged that the transaction was not intended to serve the business purpose of Penn-Texas but was arranged solely as part of the conspiracy to defraud Penn-Texas for the personal benefit and enrichment of Silberstein and Sarlie.
It is immaterial whether the acts complained of were engaged in by the plaintiff upon an appropriate authority and upon full disclosure. If, nevertheless, a trustee acts faithlessly and another aids him in such conduct to the end that they be *628 benefited through the corporation transaction, the beneficiaries are liable for the damage. It is the failure to protect exclusively the interests of the master which is the breach and creates the liability. The fraud is fully and completely set forth with abundance of factual allegation. The concerted activity to produce the breach of trust is sufficient support for the allegation of conspiracy. And upon disclosure of the fraud, the corporation may recover the secret and guilty profit even if the transaction itself was fully known and approved. The principal is not, by reason thereof, denied resort to the profit made through the acts of its faithless servant and his co-operator. In the light of these considerations we examine the remaining causes.
In the second cause it is alleged that in January, 1956 Penn-Texas began purchasing shares of common stock of Fairbanks, Morse & Company, traded regularly on the New York and Midwest Stock Exchanges. Thereupon Silberstein engaged in seven contracts for the purchase of an aggregate of 120,000 shares of such common stock. These contracts were made with one Kaufmann, as nominee for Sarlie. The contracts are dated September 24, 1956, October 8, 1956, October 11, 1956, October 12, 1956, November 5, 1956, November 15, 1956 and January 28, 1957, and each called for the delivery to plaintiff of 10,000 shares, save the January 28, 1957 contract which called for the delivery of 60,000 shares. The dollar price for the shares thus to be delivered by each of the seven contracts was, respectively: 54.50, 54.50, 54.50, 54.50, 55.10, 61.61, 69.875. The delivery date provided by each of the seven contracts was, respectivelv: April 1, 1957, April 15, 1957, April 10, 1957, April 18, 1957, April 26 to May 26, 1957, May 27, 1957. As to the seventh contract for 60,000 shares, delivery was to be made in 20,000 lots on May 31, June 30 and July 19, 1957. Also, with respect to the seventh contract, there was furnished as collateral $350,000 in cash and 20,000 shares of Fairbanks, Morse and the deposit of further cash as provided in the event of a drop in the market price. The market price of the shares with respect to each contract and on the date thereof was, respectively, in dollars, 45.875, 47.25, 49.50, 49.125, 53, 55.125 and 59.625. In fact, as alleged, Penn-Texas made the following payments to Kaufmann as nominee for Sarlie at dates before said payments were due: November 26, 1956, $340,000, on the second, third and fourth contracts on which payments were not due until April 10, 15 and 18, 1957, respectively; on December 11, 1956, $250,000, on the sixth contract on which payment was not due until April *629 26, 1957; on December 21, 1956, $225,000, on the second, third, fourth and fifth contracts on which payment was not due before April, 1957; on January 3, 1957, $175,000, on the second, third, fourth and sixth contracts; on January 7, 1957, $175,000, on the second, third, fourth and fifth contracts on which payment was not due before April, 1957; on January 30, 1957, plaintiff accepted delivery of and made payment on 20,000 shares covered by two contracts though payment and delivery thereon were not due until May 27, 1957. There are here alleged ultimate facts in abundance and sufficient to base a claim upon a purchase which plaintiff could have made elsewhere and which, in fact, was largely paid for by plaintiff and not by the pretended purchaser, all of which was intended to and did benefit a faithless trustee and his conspirators. The allegation intended to hold in the defendant Cats is sufficient.
In view of the method of payment as actually made and the other circumstances as alleged, the fact that plaintiff contracted for the delivery of common stock in the future and possibly in a rising market does not defeat the cause as pleaded.
In the third cause it is alleged that in another action brought as a derivative stockholders’ suit against the corporation and upon the transactions set out in the second cause here Silberstein caused Penn-Texas to make payment of Sarlie’s and Cats’ legal expenses. Such payments served no business purpose of Penn-Texas but were made in order to protect the conspirators and in further fraud of Penn-Texas. Thus, as part of the conspiracy, the corporation was caused to part with assets not in its interest but in the interest of the conspirators who were not entitled by the fiduciary breach to any right of ordinary claim to financial support of their defense of that action.
The fourth cause rests on certain loans made by Sarlie to the corporation. The contention here is that the loans were made upon terms extremely disadvantageous and onerous. The claim does not rest upon poor business judgment and the absence of bad faith, rather it rests upon the allegation that defendant, with Silberstein, contrived to arrange the loan rather than with normal banking channels and upon plaintiff’s collateral with the intent and for the purpose that defendant and Silberstein should obtain a personal profit by reason of the exorbitant charges, thus, unnecessarily and in breach of faith, siphoning off the assets of plaintiff.
The fifth cause concerns the transfer of an interest of plaintiff in a certain joint venture. The allegations as to the claimed damage, the terms of the sale and of the relevant values are wholly conclusory.
*630 In the sixth cause it is alleged upon the basis of the allegations set out in the first five causes that by reason of those acts and transactions Sarlie is indebted to Penn-Texas in an amount far in excess of the amount owed to Sarlie on the loans referred to in the fourth cause. A sufficient cause for relief with respect to the notes is thus stated.
The motions are granted dismissing the fifth cause and they are otherwise denied with leave to plaintiff to replead with respect to the fifth cause of action within 20 days from service of a copy of this order with notice of entry.